United States Courts
Southern District of Texas
FILED

SEP 2 5 2018

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

### HOUSTON DIVISION

| | | |
|---|---|---|
| Tariq B. Alabbassi | ) | |
| | ) | CIVIL ACTION NO. 18CV3131 |
| vs. | ) | |
| | ) | |
| Dr. Mark T. Esper, | ) | |
| Secretary, | ) | |
| Department of the Army | ) | |
| _____ | ) | |

## AMENDED EMPLOYMENT DISCRIMINATION COMPLAINT

1. This action is brought under Title VII of the Civil Rights Act 1964 for employment discrimination. Jurisdiction is conferred by Title 42 United States Code, Section 2000e-5.

2. The Plaintiff is          Tariq B. Alabbassi

   Address               P.O. Box 630441

                              Houston, TX 77263

                              USA

3. A- The defendant is      Department of the Army

                              Director, EEO Compliance and Complaints Review,

                              EEOCCR

                              ATTN: Dr. Mark T. Esper

|   |   |
|---|---|
|   | 5825 21st Street, Bldg 214, Room 129 |
|   | Fort Belvoir, VA 22060-5921 |
| B- The defendant is | United States Attorney General |
|   | Department of Justice |
|   | 10 th and Constitution Ave., N.W. |
|   | Washington, DC 20530 |
| C- The defendant is | United States Attorney's Office |
|   | Pam Anderson, Designated Agent |
|   | Houston/Galveston Division |
|   | 1000 Louisiana St. Ste. 2300 |
|   | Houston, TX 77002 |

4. The plaintiff has attached to this complaint a copy of the charges filed on April 6th, 2012 with the Equal Opportunity Commission.

5. On the date of June 7th, 2018, the plaintiff received a Notice of Right to Sue letter issued by the Equal Employment Opportunity Commission; copy attached.

6. Because of the plaintiff's

   - National Origin.

   The defendant has:

   - Failed to employee the plaintiff

   - Terminated the plaintiff's employment

   - Failed to credit the appropriate private sector experience to the plaintiff's service computation date and pay him accordingly.

- Downgraded the plaintiff's award without any justification

7. When and how the defendant has discriminated against the plaintiff:

- On March, 12th 2010, The USARCENT Civilian Personal Office denied the plaintiff request for change in the plaintiff's service computation date without explanation, and this was reaffirmed on September 2nd, 2011. No explanations were given even though the DOD Directive #1400.25, Volume 631, dtd Aug 31, 2009 allows that. The plaintiff's further requests went unanswered.

- On April 2011, Lieutenant Colonel LeiAnn Lang downgraded the plaintiff's award from Meritorious Civilian Service Award to Joint Civilian Service Commendation Award and told CPL Christina Lucena not to tell anyone. When the plaintiff became aware and questioned the change, he was informed "we don't give this kind of award at theater." Where two other white males received the Meritorious Civilian Service Award at theater. Lieutenant Colonel LaiAnn Lang said to the plaintiff on different occasions that she does not like foreigners and that foreigners take jobs from us.

- The plaintiff had to apply to his own job twice since the position was to be moved to the three star level, but the plaintiff got no respond to his applications. On October 2011, the plaintiff asked Brigadier General McMurry about the position when the plaintiff became aware that the position was going to be filled. On October 15th, 2011, the plaintiff was granted an interview for the position he was already in with the Chief of Staff, Brigadier General Bryan Roberts. In the interview, Brigadier General Bryan Roberts first question was "what brought you to Houston?" The plaintiff became uncomfortable, but still answered with "Houston is where I live, and I went to school, and where my family lives." Brigadier General Bryan Roberts did not like the

plaintiff's answer, and he tilted his head to the side, and asked the plaintiff with a tone "where were you born?" The plaintiff became extremely uncomfortable and had to pause for a minute or so, but still answered "Kuwait." On October 30th, 2011, the plaintiff was informed that he was not selected. On April 3rd, 2012, a contractor was converted to a GS employee since the person who was hired for this position resigned. No opportunity was given to the plaintiff for the position in issue. The people that were hired for this position didn't possess the strong knowledge of the Foreign Military Sales (FMS) where the plaintiff had the strongest knowledge of the Foreign Military Sales and contracts since he had been working in that position since and before March 1st , 2010.

8. The plaintiff requests that the defendant be ordered:

- To re-employ the plaintiff

- Credit the appropriate private sector experience to the plaintiff's service computation date, and recalculate his pay accordingly.

- PAST PECUNIARY DAMAGES

  Due to the high stress level the plaintiff is going through as a result of this discrimination, the plaintiff's immune system weakened.

  a- $138,043.19 for Pneumonia/Collapsed left lung – Collateral source rule needs to be applied

  b- $16,544.77 for Dizziness-Nausea-Vomiting – Collateral source rule needs to be applied

- LOST OF EARNING POTENTAIL

The plaintiff was GS14/6 with $112,804.00 pay and working in Iraq was adding 70% hazard and hardship. This makes the plaintiff's income $191,766.80 a year which breaks down to $15,980.57 a month. The plaintiff lost his job on July 25th, 2013 and the position in issue still stands to date, so the plaintiff's potential lost earnings is 61 months (until 8/2018) X $15,980.57 = $974,814.77 in lost of earning potential.

- The discrimination harmed and still harming the plaintiff severely, physically, health wise, mentally. The plaintiff is seeking the maximum allowed by law, $300,000.00 cap on compensatory damages.

- The court grant other relief, including injunctions, damages, costs, and attorney fees.



TARIQ B. ALABBASSI
P.O. BOX 630441
HOUSTON, TX 77263
713-269-9549

From: **Terric** tariq77777@hotmail.com
Subject: Re: Follow up on my 9/4/2016 appeal / Docket# 0120162771
Date: June 7, 2018 at 8:42 AM
To: OFOEEOC OFO.EEOC@EEOC.GOV
Cc: Terric tariq77777@hotmail.com

Sir/Ma'am,

Thank you for your email.

I am surprised why I was not aware of this and why your 1-800-669-4000 was not aware of this when I called them.

I can see that your decision on my appeal is not on my favor, therefore; I am planning to appeal or file a civil action.

Since I just received your decision on my appeal, then my 30 calendar days for appeal and my 90 calendar days for filing a civil action starts today.

Thanks again for your time and help in this matter.


Regards,
Mr. Tariq Alabbassi
P.O. BOX 630441
HOUSTON, TX 77263




On Jun 6, 2018, at 1:13 PM, OFOEEOC <OFO.EEOC@EEOC.GOV> wrote:


Tariq Alabbassi,

A decision was issued on your appeal on March 15, 2018.  Attached please find copies of the decision and Certificate of Mailing.  The password to open the attached documents will be sent in a separate email.

Attorney of the Day
Office of Federal Operations
EEOC

**From:** Tariq Alabbassi [mailto:tariq77777@hotmail.com]
**Sent:** Wednesday, June 06, 2018 9:11 AM
**To:** OFOEEOC <OFO.EEOC@EEOC.GOV>
**Cc:** Tariq Alabbassi <tariq77777@hotmail.com>
**Subject:** Follow up on my 9/4/2016 appeal / Docket# 0120162771

Sir/Ma'am,


I filed an appeal on 9/4/2016 as a federal employee.

I called 202-663-4599, but the mail box was full and I was asked by the recorded message to call 1-800-669-4000 for updates about my appeal.

At 1-800-669-4000, I spoke to Mr. Ed  Goolsby (spelling). Mr. Ed informed me that my appeal is still under review and no decision is on record yet, and to call monthly in order to check as he does not know when will a decision will be taken.

I am planning, very soon, on traveling overseas for 1-3 months (date and length is not set yet), and I would like to check if you know the expected date of your decision on my appeal or if we can make an arrangement to make sure that I get your decision while I am overseas (in case I was traveling)!!


Your help in this matter is highly appreciated.

Regards,
Mr. TARIQ ALABBASSI
P.O. BOX 630441
HOUSTON, TX 77263

Docket# <u>0120162771</u>

&lt;Decision.0120162771.pdf&gt;

&lt;Certificate of Mailing.0120162771.pdf&gt;



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Tariq B. Alabbassi, a/k/a
Spencer T.,[1]
Complainant,

v.

Dr. Mark T. Esper,
Secretary,
Department of the Army,
Agency.

Appeal No. 0120162771

Hearing No. 570-2013-0071X

Agency No. ARHQOSA12JAN00202

## DECISION

Complainant appeals to the Equal Employment Opportunity Commission (EEOC or Commission) from an Agency's final order dated August 1, 2016, finding no discrimination regarding his complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. For the following reasons, we AFFIRM the Agency's final order finding no discrimination.

## BACKGROUND

At the time of events giving rise to this complaint, Complainant was employed by the Agency as a Cultural Advisor (linguist), GS-0301-14, for the Director of the Iraq Security Assistance Mission (ISAM), under a term appointment in the Civilian Expeditionary Workforce, United States Army Central Command (USARCENT).[2] The record indicates that on November 25,

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

[2] The record indicates that June 30, 2012, Complainant transferred from Department of Army to Department of Air Force. On July 5, 2013, Complainant indicates that he lost his job. These matters are not at issue.

2                                                                    0120162771

2011, Complainant contacted an EEO Counselor regarding his complaint.[3]  Complainant filed a complaint on May 15, 2012, alleging discrimination based on race (Caucasian) and national origin (Kuwait/Arab) when:

> (1) On March 12, 2010, an identified officer, USARCENT, Civilian Personal Office (CPO), denied his request for change in his service computation date.  This was reaffirmed on September 2, 2011, by another officer from the same office.

> (2) At the end of the 2010 annual rating period, the rating official, Brigadier General (BG1), ISAM, failed to place his 2010 rating into his Official Personal File, thus preventing him from being included in NSPS (National Security Personnel System) pay pool;[4]

> (3) In April 2011, Lieutenant Colonel (LTC1), ISAM Executive Officer, attempted to downgrade his award recommendation from a Meritorious Civilian Service Commendation to a Joint Civilian Service Commendation and delayed its presentation until August 2011.

> (4) On October 15, 2011, BG2, ISAM Chief of Staff, asked questions that he believed to be illegal questions directed at his national origin during his interview for the position of Culture Advisor, GS-0301-14, Office of Security Cooperation – Iraq (OSC-I).  He asked, "What brought you to Houston?" and "Where were you born?"; and

> (5) On October 30, 2011, he was not selected for the position of Cultural Advisor, described in claim (4).

On May 24, 2012, the Agency issued its partial acceptance letter dismissing claims (1), (2), and (3) due to untimely EEO Counselor contact and accepting claims (4) and (5) for investigation. Upon completion of the investigation of the accepted claims, Complainant requested a hearing before an Equal Employment Opportunity Commission Administrative Judge (AJ).  On October 21, 2015, the AJ issued an order ruling on Complainant's motion to compel, the Agency response, and the Agency's supplemental response sustaining the Agency's dismissal of claims (1), (2), and (3).  On September 4, 2016, the AJ issued a decision without holding a hearing, finding no discrimination regarding claims (4) and (5).  The Agency's final order implemented the AJ's decision.  Complainant appeals.

---

[3] Although Complainant was not able to actually contact an EEO Counselor until January 24, 2012, the parties agreed that his initial EEO Counselor contact was on November 25, 2011, when he unsuccessfully attempted to contact an EEO Counselor.
[4] On appeal, Complainant clarifies the incident that BG1 did place his 2010 rating into his Official Personal File but USARCENT did not follow up on it.

## ANALYSIS AND FINDINGS

Claims (1), (2), and (3):

Regarding claims (1), (2), and (3), upon review we find that the Agency properly dismissed those due to untimely EEO Counselor contact pursuant to 29 C.F.R. § 1614.107(a)(2). Regarding claim (1), the record indicates that on March 12, 2010, Complainant was informed of the CPO's denial of his request to change his service computation date. Specifically, the CPO notified Complainant that the Agency were unable to grant his request for a service computation date that would credit his private sector experience. The record further indicates that Complainant thereafter unsuccessfully appealed the subject matter within the Agency. Complainant indicated that on September 2, 2011, the denial of his request was reaffirmed by the CPO. On appeal, Complainant contends that his November 25, 2011 EEO contact regarding the subject matter was timely because he did not know he was discriminated against even when he contacted the EEO Counselor. He indicates without any further explanation that he became aware of the discrimination just before he filed the instant complaint.

Regarding claim (2), the record indicates that Complainant was issued his "Early Annual Assessment" for his 2010 performance appraisal at issue from BG1 face-to-face on January 29, 2011. Furthermore, the record indicates that on August 23, 2011, Complainant inquired about his concerns about his appraisal and the NSPS pay pool at issue, along with his service computation date change request, described in claim (1), to the CPO. In response, on September 2, 2011, the CPO notified Complainant that "[He] was not on approved performance standards; therefore, [he] was not part of the NSPS pay pool." Complainant contends that his EEO contact was timely based on the same reason as he described in claim (1).

Regarding claim (3), Complainant indicated that: in April 2011, management submitted a recommendation for a Meritorious Civilian Service Commendation award at issue; LTC1, however changed his award to a Joint Civilian Service Commendation; in August 2011, he learned that LTC1 also gave a Joint Civilian Service Commendation award to a identified Corporal (a lower ranking employee); he then questioned about his award change; and in August 2011, he received a Meritorious Civilian Service Commendation. Complainant claimed that he became aware of the discrimination in October 2011, when an identified coworker received a Meritorious Civilian Service Commendation without any issue within 10 days (on appeal, he indicates that it was within 2-3 weeks) of submission of the award recommendation. The Agency indicated that the identified coworker's award was recommended in August 2011, and was issued in October 2011.

The Commission has adopted a "reasonable suspicion" standard (as opposed to a "supportive facts" standard) to determine when the limitation period is triggered under the EEOC Regulations. See 29 C.F.R. §1614.105(a)(2); Ball v. United States Postal Service, EEOC Request No. 05880247 (July 6, 1988).

After a review of the record, we find that Complainant reasonably should have suspected discrimination at the time of the alleged incidents in claims (1), (2), and (3) on March 12, 2010, September 2, 2011, August 2011, respectively. Specifically, regarding claim (3), we find that Complainant knew or should have suspected discrimination concerning his award change at the latest in August 2011, when he learned about the Corporal's award which prompted him to question management about his award change. Complainant did not contact an EEO Counselor regarding the incidents until November 25, 2011, which was beyond the 45-day time limit set by the regulations. Based on the foregoing, we find that the Agency's dismissal of claims (1), (2), and (3) due to untimely EEO Counselor contact was proper.

Claims (4) and (5):

Turning to claims (4) and (5), the Commission's regulations allow an AJ to issue a decision without a hearing when he or she finds that there is no genuine issue of material fact. 29 C.F.R. § 1614.109(g). This regulation is patterned after the summary judgment procedure set forth in Rule 56 of the Federal Rules of Civil Procedure. The U.S. Supreme Court has held that summary judgment is appropriate where a court determines that, given the substantive legal and evidentiary standards that apply to the case, there exists no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, a court's function is not to weigh the evidence but rather to determine whether there are genuine issues for trial. Id. at 249. The evidence of the non-moving party must be believed at the summary judgment stage and all justifiable inferences must be drawn in the non-moving party's favor. Id. at 255. An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Oliver v. Digital Equip. Corp., 846 F.2D 103, 105 (1st Cir. 1988). A fact is "material" if it has the potential to affect the outcome of the case. In this case, we find that the AJ properly issued a decision without a hearing because no genuine dispute of material fact exists.

In the instant case, assuming arguendo that Complainant had established a prima facie case of discrimination, the AJ determined that the Agency has articulated legitimate, nondiscriminatory reasons for the alleged incidents. At the relevant time, Complainant was employed by the Agency as a Cultural Advisor (linguist), GS-301-14, ISAM, under a term appointment in the Civilian Expeditionary Workforce, USARCENT. Complainant applied for the position of Culture Advisor, GS-0301-14, OSC-I, which was also a term appointment in the Civilian Expeditionary Workforce, USARCENT, and in that position, he would be working for an identified three-star Lieutenant General.

Regarding claim (4), Complainant claimed that during his interview, the Selecting Officer (SO), BG2, Deputy Chief, OSC-I, asked him, "What brought you to Houston?" and "Where were you born?" Complainant then told the SO that he was born in Kuwait. Complainant claimed that there was a stereotype that Iraqis did not like Kuwaitis although he did not believe that to be the case. Complainant indicated that although he was born in Kuwait, he was of Iraqi origin.

The SO indicated that during the interview, he asked the same 16 questions to all candidates, including some natural follow-up questions based on the interview. His question "how he came to be in Houston" to Complainant was a follow-on question to interview question #1 – "Tell me about yourself." The SO stated that his sole intent for asking those questions as Complainant alleged was to get to know the candidates, be personable, and "break the ice" so they were comfortable with the interview process.

Regarding claim (5), the SO indicated that there were approximately 20 applicants and a panel referred him four of those applicants for the selection process. The SO stated that he developed 16 questions which were reviewed and approved by the servicing Judge Advocate. The SO stated that based on the interviews and resumes, he selected a Selectee (SE) who was a Senior Cultural Advisor, GS-15, for the USF-I Chief of Staff because the SE was the best qualified for the position at issue due to his experience at the four-star level and his extensive knowledge on the transition of USF-I to OSC-I, the long-term mission of OSC-I, OSC-I's relationship with the U.S. Embassy, and Foreign Military Sales.

Complainant claimed that the SO, and many Generals, believed that Iraqis did not like Kuwaitis. The AJ stated and we agree that Complainant's argument was speculative and insufficient to show that the SO used Complainant's birthplace as a factor in his nonselection. Complainant's former supervisor, who was the General and also a strong supporter of Complainant, indicated that he was unaware of any stereotype amongst the Generals serving in Iraq that Iraqis did not like Kuwaitis. The former supervisor acknowledged that he did not know the SE at the relevant time. Complainant claimed that he was already performing in the position at issue as a U.S. federal employee. Complainant's current supervisor disagreed with that characterization and indicated that Complainant was performing as his Cultural Advisor in ISAM Directors, and not in OSC-I. The SO also indicated that Complainant was never the Cultural Advisor to a three-star Lieutenant General.

Upon review, we agree with the AJ that Complainant failed to rebut the Agency's legitimate, nondiscriminatory reason for not selecting him for the position. Furthermore, Complainant failed to show that his qualifications for the position were plainly superior to the SE's qualifications. See Wasser v. Department of Labor, EEOC Request No. 05940058 (November 2, 1995). Based on the foregoing, we find that Complainant has failed to show that the Agency's action was motivated by discrimination as he alleged.

## CONCLUSION

Accordingly, the Agency's final order dismissing claims (1), (2), and (3), and finding no discrimination concerning claims (4) and (5) is AFFIRMED.

STATEMENT OF RIGHTS - ON APPEAL
RECONSIDERATION (M0617)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:

1.  The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.  The appellate decision will have a substantial impact on the policies, practices, or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. A party shall have **twenty (20) calendar days** of receipt of another party's timely request for reconsideration in which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission. Complainant's request may be submitted via regular mail to P.O. Box 77960, Washington, DC 20013, or by certified mail to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The agency's request must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

7                                                          0120162771

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations


March 15, 2018
Date

8                                          0120162771

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed**. I certify that this decision was mailed to the following recipients on the date below:

Tariq B. Alabbassi
PO Box 630441
Houston, TX 77263


Department of the Army
Director, EEO Compliance and Complaints Review, (EEOCCR)
ATTN: SAMR-EO-CCR (Spurgeon A. Moore)
5825 21st Street, Bldg 214, Room 129
Fort Belvoir, VA 22060-5921


March 15, 2018
Date

Compliance and Control Division

# FORMAL COMPLAINT OF DISCRIMINATION

For use of this form, see AR 690-600; the proponent agency is OSA

### PRIVACY ACT STATEMENT (5 U.S.C. §552a)

| | |
|---|---|
| AUTHORITY: | Public Law 92-261 |
| PRINCIPAL PURPOSE: | Used for formal filing of complaints of discrimination because of race, color, national origin, religion, sex, age, physical or mental disability, and/or reprisal by Department of the Army civilian employees, former employees, applicants for employment, and some contract employees. |
| ROUTINE USES: | Information will be used (a) as a data source for complaint information for production of summary descriptive statistics and analytical studies of complaints processing and resolution efforts; (b) to respond to general requests for information under the Freedom of Information Act; (c) to respond to requests from legitimate outside individuals or agencies (Congress, White House, Equal Employment Opportunity Commission) regarding the status of an EEO complaint or appeal; or (d) to to adjudicate an EEO complaint or appeal. |
| DISCLOSURE: | Voluntary, however, failure to complete all appropriate portions of the form may lead to rejection of complaint on the basis of inadequate data on which to continue processing. |

| 1. NAME (Last, First, Middle Initial) | 2. SOCIAL SECURITY NUMBER | 3. HOME TELEPHONE NUMBER |
|---|---|---|
| ALABBASSI, TARIQ, B | ▮▮▮▮▮▮▮ | 713-269-9549 |

| 4. HOME ADDRESS | 5. DO YOU CURRENTLY WORK FOR THE FEDERAL GOVERNMENT? |
|---|---|
| P.O. BOX 630441 HOUSTON, TX 77263-0441 | ☐ NO   ☑ YES (If yes, complete 6, 6a, 6b, 7 and 8.) |

| 6. NAME OF AGENCY WHERE CURRENTLY EMPLOYED | 6a. WORK TELEPHONE NUMBER |
|---|---|
| DEPARTMENT OF DEFENSE DEPARTMENT OF ARMY ARCENT, SHAW AFB, SC | 803-885-7146 |

| 6b. EMPLOYER'S ADDRESS (Complete information to include office symbol). | 7. PAY PLAN/SERIES/GRADE |
|---|---|
| OFFICE OF SECURITY COOPERATION - IRAQ UNIT 9920 BOX 0040 DPO, AE 09348 | GS-0301-14 |
| | 8. CURRENT JOB TITLE |
| | CULTURAL ADVISOR |

### SECTION I - COMPLAINT INFORMATION

**9. REASON YOU BELIEVE YOU WERE DISCRIMINATED AGAINST** (Check below all that apply. Identify specific race, color, sex, age, religion, national origin, and/or disability.)

☑ RACE  CAUCASIAN      ☐ COLOR _____    SEX ☐ Male ☐ Female    ☐ AGE _____

DATE OF BIRTH _____    ☑ NATIONAL ORIGIN  KUWAIT/ARAB    ☐ RELIGION _____

DISABILITY ☐ Mental _____    ☐ Physical _____    ☐ REPRISAL _____

(Date(s) and type of prior EEO activity)

**10. EXPLAIN WHEN AND HOW YOU WERE DISCRIMINATED AGAINST** (If your complaint involves more than one basis of alleged discrimination, list and number each basis separately and provide specific factual information in support of each allegation of discrimination. If necessary, continue on page 2.)

PLEASE SEE ATTACHED DOCUMENTS

*[Stamp: 15 MAY 2012 HQDA - EEO SAAA - EO Received SMO]*

| DA FORM 2590, FEB 2004 | REPLACES DA FORM 2590-R, AUG 89, WHICH IS OBSOLETE. | PAGE 1 OF 3 APD PE v1.01ES |
|---|---|---|

000011

EXPLAIN WHEN AND HOW YOU WERE DISCRIMINATED AGAINST *(Cont'd) (If necessary, additional sheets may be used.)*

PLEASE SEE ATTACHED DOCUMENTS

| 11a. NAME OF ORGANIZATION WHERE ALLEGED DISCRIMINATION OCCURRED | 11b. ADDRESS OF ORGANIZATION WHERE ALLEGED DISCRIMINATION OCCURRED |
|---|---|
| OFFICE OF SECURITY COOPERATION- IRAQ | DPO, AE 09348 |

12a. HAVE YOU DISCUSSED THE ISSUE *(s)* IN BLOCK 10 WITH AN EEO COUNSELOR? ☐ NO ☑ YES *(If yes, complete 12b, 12c, and 12d below.)*

| 12b. NAME OF EEO COUNSELOR | 12c. DATE OF INITIAL CONTACT WITH EEO OFFICIAL *(YYYYMMDD)* | 12d. DATE NOTICE OF RIGHT TO FILE A FORMAL COMPLAINT OF DISCRIMINATION RECEIVED *(YYYYMMDD)* |
|---|---|---|
| MORRIS J. SCHWARTZ | 20120125 | 20120323 |

13. ELECTION OF REPRESENTATION

☐ ATTORNEY ☐ NON-ATTORNEY ☑ NO REPRESENTATION

NAME OF REPRESENTATIVE

ADDRESS

TELEPHONE NUMBER: FAX: E-MAIL:

14. WHAT RELIEF ARE YOU SEEKING TO RESOLVE THIS COMPLAINT? *(State specific corrective action desired for each allegation.)*

PLEASE SEE ATTACHED DOCUMENTS

*The more this takes, the more mental suffering and anguish I go through, and the more discomefortable I become which could/will result on changing the relief I seek. TB.*

15a. HAVE THE ISSUES IDENTIFIED IN BLOCK 10 BEEN APPEALED TO THE MERIT SYSTEMS PROTECTION BOARD *(MSPB)* OR FILED UNDER A UNION NEGOTIATED GRIEVANCE PROCEDURE? ☑ NO ☐ YES (If yes, complete 15b, 15c, and 15d below.)

| 15b. | 15c. DATE FILED *(YYYYMMDD)* | 15d. MSPB OR UNION DOCKET NUMBER *(If known)* |
|---|---|---|
| ☐ MSPB ☐ UNION NEGOTIATED GRIEVANCE | | |

16. LIST NAME*(s)* OF WITNESS *(ES)* AND BRIEFLY STATE WHAT INFORMATION WITNESS MAY CONTRIBUTE TO THE INVESTIGATION OF YOUR COMPLAINT.

PLEASE SEE ATTACHED DOCUMENTS

| 17a. SIGNATURE OF COMPLAINANT | 17b. DATE DA FORM 2590 SIGNED BY COMPLAINANT *(YYYYMMDD)* |
|---|---|
| | 20120406 |

DA FORM 2590, FEB 2004

**SECTION II - TO BE COMPLETED BY THE PROCESSING EEO OFFICER** *(EEOO)*

| 18a. NAME OF COMPLAINANT | 18b. SOCIAL SECURITY NUMBER | 18c. DA DOCKET NUMBER |
|---|---|---|
| Tariq B. Alabbassi | | ARHG OSA 12 JAN 00202 |

| 18d. TYPED/PRINTED NAME OF EEOO | 18e. ADDRESS OF EEO OFFICE *(Complete address to include office symbol)* |
|---|---|
| Beatrice Bernfeld | |

**18f. EEOO TELEPHONE NUMBER**
703 545-4518

**18g. EEO OFFICE FAX NUMBER**

| 18h. EEOO E-MAIL ADDRESS | 18i. SIGNATURE OF EEOO |
|---|---|

| 19a. DATE COMPLAINT RECEIVED *(YYYYMMDD)* | 19b. METHOD OF DELIVERY |
|---|---|
| 19c. DATE COMPLAINT DEEMED FILED *(YYYYMMDD)* | ☐ IN PERSON    ☐ MAIL *(postmark date)* *(YYYYMMDD)* _____ |
| 19d. DATE COMPLAINT ACCEPTED OR DISMISSED *(YYYYMMDD)* | ☐ FAX    ☐ OTHER |

**20. IDENTIFY ISSUES IN BLOCK 10 BY PLACING AN "A" FOR ACCEPTED OR A "D" FOR DISMISSED IN APPLICABLE BOX** *(es)*

| | | |
|---|---|---|
| APPOINTMENT/HIRE | EXAMINATION/TEST | REINSTATEMENT |
| ASSIGNMENT OF DUTIES | EVALUATION/APPRAISAL | REPRIMAND |
| AWARDS | HARASSMENT *(non-sexual)* | RETIREMENT/CONSTRUCTIVE DISCHARGE/RESIGNATION |
| CONVERSION TO FULL TIME | HARASSMENT *(sexual)* | SUSPENSION |
| DETAIL | PAY/OVERTIME | TERMINATION |
| DEMOTION | PROMOTION/NON-SELECTION | TIME AND ATTENDANCE |
| DISCIPLINARY ACTION *(other)* | REASSIGNMENT-REQUEST DENIED | TRAINING |
| DUTY HOURS | REASSIGNMENT-DIRECTED | TERMS/CONDITIONS OF EMPLOYMENT |

☐ OTHER
*(Specify)*

**21. REMARKS**

DA FORM 2590, FEB 2004

PAGE 3 OF 3
APD PE v1.01ES

**The Road to EEO**

It took me many attempts until I was able to get in touch with you, and I blame that on the lack of the available information and the lack of the cooperation. The following lists what I did in order to get to the EEO office:-

1- On 11/25/2011, I emailed USF-I EEO, but I got no answer back (all were redeployed)

2- On 11/28/2011, I got in touch with COL Maggie Dunn (USF-I IG) asking for help

3- On 11/28/2011, COL Maggie Dunn took my written email and emailed it to ARCENT asking for help, but there was no answer

4- On 11/29/2011, COL Maggie Dunn forwarded my email to COL Laureen Barone (ARCENT IG) asking for help for me

5- On 11/30/2011, COL Laureen Barone responded with the following "Maggie, Good Afternoon. I am acknowledging receipt and will ensure it gets to the correct office."

6- On 12/12/2011, I emailed COL Laureen Barone asking for an update of my issue

7- On 12/13/2011, COL Laureen Barone responded with the following "Mr. Alabbassi, Good Evening EST. I am acknowledging receipt of your email. My question is what is it you want the IG to do for you? In reviewing your 3 issues, the first two appear to have been answered by personnel (CPO) professionals on 2 Sep 2011. For the last issue, if there is a concern with how an interview was conducted, CPO should also be contacted. I would appreciate any clarification you can provide.  Thank you.

8- On 12/13/2011, I responded back explaining my issues

9- On 12/22/2011, COL responded with the following "Mr. Alabbassi, Good Afternoon.  I just returned from a TDY to Shaw.  While there, I spoke with Ms. Caison about your issues.  ARCENT is working with Fort Jackson to establish a MOA where Fort Jackson would provide EEO support for ARCENT personnel.  While ARCENT was in Atlanta, Fort McPherson provided the service.  My recommendation is you contact Ms. Caison for further assistance.  I don't think the MOA has been signed yet.

**5**

000014

10-On 12/22/2011, I responded with the following "Ma'am, Ms. Caison was emailed on 11/28/2011 (please see email below), and she chose not to help by not responding. As you can see, your process is not user friendly. Thanks

11-On 12/22/2011, COL Laureen Barone responded with the following "Mr. Alabassi, Thank you for the feedback.  We do the best we can with what we have. Have a nice day.  R/lb

12-On 01/10/2012, I emailed EEOC asking for help.

13-On 01/11/2012, EEOC responded with some points of contacts information.

14-On 01/20/2012, I called Mr. Spurgeon Moore at EEO Compliance (information provided by EEOC)

15-On 01/24/2012, I got an email from Mr. Spurgeon Moore with the following "Mr. Alabassi, I have contacted the Pentagon's EEO office in the Washington area who will have one of their counselors contact you in the next day or so.  They should be able to address your concerns and get you the assistance you need. Let me know if you have not been contacted by the end of next week.

16-On 01/25/2012, I got an email from you _ finally I am at the right place!!!!

Now, I am seeking your help. Thanks.

Regards,

02|16|2012

TARIQ ALABBASSI

000015

Thank you for giving me the opportunity to explain my issues to you. Thank you for your help.

This is to summaries the 4 issues I am facing.

1- Issue one: crediting the appropriate private sector experience to my Service Computation Date.

I previously inquired with USARCENT via e-mail about crediting the appropriate private sector experience to my Service Computation Date (SCD), as I've been doing same position as a contractor since 01 Sept 07.  The SCD reflected on my SF-50 is 01 Mar 10.  The responses that I got were "we are not aware such credit could be given" / "authority has not been delectated to us"/ "you don't qualify for this cause you are not NSPS". I asked to be directed to, by providing name, phone number, address, and email address, of a higher command where I can seek justice in this issue, but I got no answer back so far. Please see DoD Directive #1400.25, Volume 631, dtd Aug 31, 2009.  It can be found at the following link:  http://www.dtic.mil/whs/directives/corres/pdf/1400.25-V631.pdf
    I've placed a few paragraphs below for your review.
        b. That credit pursuant to section 6303(e) of Reference (c) for non-Federal or active duty Military Service experience toward annual leave accrual purposes is a discretionary flexibility designed for use in meeting civilian strategic human capital needs; there is no entitlement to credit for non-Federal employment, active duty Military Service, or volunteer experience pursuant to this Volume.
        c. To offer leave service computation date (SCD) credit pursuant to section 6303(e) of Reference (c), when the criteria of this Volume is met, for directly related experience in non-Federal or active duty Military Service positions when such credit would serve as an incentive to acquire high quality talent for positions that are important to mission accomplishment or achievement of performance goals.
        d. To consider such factors as the currency and relevancy of the experience to be credited to the position being filled; the criticality of the position to the organization's mission; the difficulty in filling the position; and the existing capabilities to attract candidates to the position when making determinations regarding authorizing such credit under section 6303(e) of Reference (c).
1. ELIGIBILITY. Employees eligible for consideration in accordance with this Volume must meet these criteria:
        a. The employee must be receiving his or her first appointment (regardless of tenure) as a civilian employee of the Federal Government or be reappointed following a break in service of at least 90 calendar days after his or her last period of civilian Federal employment.
        b. The skills and experience of the employee must be essential to the new position and must have been acquired through performance in a non-Federal, Military Service, or volunteer position having duties that directly relate to the duties of the position to which the employee is being appointed.
        c. The skills and experience of the employee must be necessary to achieve an important agency mission or performance goal.

000064

d. The employee is being appointed to a position that is covered by the Federal annual and sick leave program according to sections 6303 and 6307 of Reference (c).

e. The authorized management official determines, in writing, that the conditions in paragraphs 1.a. through 1.d. of this enclosure are met.

2- Issue two: My Evaluations (copy of my evaluation is attached)

My last year evaluation was never credited to me. I was told by USARCENT that "it was submitted late (not my fault)" / "you should get the basic at least" / "you are not NSPS, therefore, you don't qualify. I asked to be directed to, by providing name, phone number, address, and email address, of a higher command where I can seek justice in this issue, but I got no answer back so far. Now, Brig Gen McMurry is trying to do my valuation for this year, but he is getting the run around!! Please help me solve this issue, or direct me to whom I should speak.

3- On 4/2011, Mr. Tom Lockhart, ISAM COS submitted an award request for me on behalf of Brig Gen Jansson, ISAM Director, to LtCol LeiAnn Lang, ISAM XO. The award was Meritorious Civilian Service Award. LtCol Lang kept on delaying my award until the night before her redeployment, and she submitted my award after changing it to Joint Civilian Service Commendation award, even though she is not the decision maker on this. On 8/2011, LtCol Lang gave the downgraded award to ISAM Admin, CPL Christina Lucena and told her not to tell anyone (according to CPL Christina Lucena). I was informed by CPL Lucena of what went on, therefore; I stopped the process and questioned the change. The first answer I got "we don't give this kind of award at theater," so I asked for that in writing, but then, ISAM new COS had it changed back to Meritorious Civilian Service Award. I got the award. Not long after that, Mr. John Tackis received the same award and it took less than 10 days.
It is clear to me NOW, after all what I went through of the 4 issues listed here, that LtCol Lang violated my 5th and 14th Amendments rights. I am sure if my name was not "TARIQ – Arab name" and it was "John – western name" my award would have never been downgraded nor it would have been delayed for over 4 months!!!

4- Issue 3: My position's interview (I have been doing this for over 4 years / almost 2 years as DOD civilian)

My position has been moved to be with LTG Caslen. I was asked to apply to my own position twice. Once around April 2011 or so, and the second around July 2011 or so, and I did, but I got no responses. On October 2011, I spoke with Brig Gen McMurry, and I asked him that I need to be given the chance to interview with LTG Caslen since he does not know me. On October 15, 2011, I was granted an interview with LTG Caslen's chief of staff, BG Roberts.
When I went to the interview, BG Robert's first question was "what brought you to Houston?" This question made me little uncomfortable since I know the reason behind, but to give the benefit of the doubt, I answered with"
Houston is where I live, and I went to school, and where my family lives."
BG Roberts did not like this answer. BG Roberts tilted his head to the side, and asked me with a tone "where were you born?" This question made me extremely

000065

uncomfortable. I had to pose for a minute or so, but I answered him anyway. I was extremely uncomfortable during the whole interview. When I came back for the interview, Brig Gen McMurry asked me how was it, I responded good with the exception to one question, but I never told him what was that question. On October 30, 2011, I got an email stating that someone else was selected. I informed Brig Gen McMurry of this, and at that time I informed him of the question. Brig Gen McMurry started taking some actions and moving things. I was offered a position as a contractor, but I rejected it since that is not a DOD civilian position nor it is what I applied for.

Then finally, I was informed by Brig Gen McMurry that I will be staying and that I have been put against an army billet, but I received no documentations to support that. On, 12/20/2011 I received a 6-months extension on my TDY order, but it was not for the position which I applied for!!!

To summaries:
- This position is where I am now (I have been doing this for over 4 years / almost 2 years as DOD civilian)
- BG Roberts asked me an illegal question (WHERE WERE YOU BORN?) and it was his first question after (WHAT brought you to Houston?) - It was clear to me that his mind was set after that question.
- I was and still extremely uncomfortable because of this question. I am still thinking about it all the time, and I get extremely uncomfortable when I see BG Roberts.
- It is clear that the decision was taking based on my birth place, and that is illegal.

On the 4 issues listed above, I believe that my basic rights which are protected under the Constitution of the United States of America (5th and 14th Amendments) were violated. I am extremely uncomfortable. I believe that I am not given the equal opportunity. I am seeking you help and justice on the above 4 issues which I am facing. No one should go through this in order to get what is his/hers.

Thank you for your time and help, and may God help you and bless you in doing what is best for our great nation, the USA.

Regards,

02/04/2012

Tariq Alabbassi

Attachments:
- Email traffic
- DoD Directive
- My 2010 & 2011 evaluations

**Issue 4:**

My position's interview (I have been doing this for over 4 years / almost 2 years as DOD civilian)

My position has been moved to be with LTG Caslen. I was asked to apply to my own position twice. Once around April 2011 or so, and the second around July 2011 or so, and I did, but I got no responses. In October 2011, I spoke with Brig Gen McMurry, and I asked him that I need to be given the chance to interview with LTG Caslen since he does not know me. On October 15, 2011, I was granted an interview with LTG Caslen's chief of staff, BG Roberts.
When I went to the interview, BG Robert's first question was "what brought you to Houston?" This question made me little uncomfortable since I know the reason behind, but to give the benefit of the doubt, I answered with"
Houston is where I live, and I went to school, and where my family lives."
BG Roberts did not like this answer. BG Roberts tilted his head to the side, and asked me with a tone "where were you born?" This question made me extremely uncomfortable. I had to pose for a minute or so, but I answered him anyway. I was extremely uncomfortable during the whole interview. When I came back for the interview, Brig Gen McMurry asked me how was it, I responded good with the exception to one question, but I never told him what was that question. On October 30, 2011, I got an email stating that someone else was selected. I informed Brig Gen McMurry of this, and at that time I informed him of the question. Brig Gen McMurry started taking some actions and moving things. I was offered a position as a contractor, but I rejected it since that is not a DOD civilian position nor it is what I applied for.
Then finally, I was informed by Brig Gen McMurry that I will be staying and that I have been put against an army billet, but I received no documentations to support that. On, 12/20/2011 I received a 6-months extension on my TDY order, but it was not for the position which I applied for!!!
To summaries:
- This position is where I am now (I have been doing this for over 4 years / almost 2 years as DOD civilian)
- BG Roberts asked me an illegal question (WHERE WERE YOU BORN?) and it was his first question after (WHAT brought you to Houston?) - It was clear to me that his mind was set after that question.
- I was and still extremely uncomfortable because of this question. I am still thinking about it all the time, and I get extremely uncomfortable when I see BG Roberts.
- It is clear that the decision was taking based on my birth place, and that is illegal.

- Three days ago, I learned that the person who was hired for this position had resigned, and that OSC-I, about seven days ago, converted a contractor into the GS system, and hired him into this position.

added on 04/06/2012  TB.

000067

| **EEO COUNSELOR'S REPORT** | 1. DA DOCKET NUMBER |
|---|---|
| For use of this form see AR 690-600, the proponent agency is OSA. | ARHQOSA12JAN00202 |

## PRIVACY ACT STATEMENT (5 U.S.C. §552a)

| | |
|---|---|
| **AUTHORITY:** | Public Law 92-261 |
| **PRINCIPAL PURPOSE:** | Used for processing of complaints of discrimination because of race, color, national origin, religion, sex, age, physical and/or mental disability, or reprisal by Department of the Army civilian employees, former employees, applicants for employment and some contract employees. |
| **ROUTINE USES:** | Information will be used (a) as a data source for complaint information for production of summary descriptive statistics and analytical studies of complaints processing and resolution efforts; (b) to respond to general requests for information under the Freedom of Information Act; (c) to respond to requests from legitimate outside individuals or agencies (White House, Congress, Equal Employment Opportunity Commission) regarding the status of a complaint or appeal; or (d) to adjudicate complaint or appeal. |
| **DISCLOSURE:** | Voluntary, however, failure to complete all appropriate portions of this form may lead to delay in processing and/or rejection of complaint on the basis of inadequate data on which to continue processing. |

### SECTION I - PRE-COMPLAINT INTAKE INTERVIEW

| 2. NAME OF AGGRIEVED (Print-Last, First, Middle Initial) | 3. JOB TITLE |
|---|---|
| Alabbassi, Tariq B. | Cultural Advisor |

| 4. PAY PLAN/SERIES/GRADE | 5. DUTY ORGANIZATION (Complete address including office symbol) |
|---|---|
| GS-301-14 | Office of Security Cooperation-Iraq (OSC-I) ARCENT IZ-Baghadad, Iraq |

| 6. WORK TELEPHONE | 7. HOME TELEPHONE | 8. HOME ADDRESS |
|---|---|---|
| DSN 318-239-5493 | US Cell 713-389-9549 | PO Box 630441, Houston, TX 77263 |

| 9. DATE OF ALLEGED DISCRIMINATORY ACTION (YYYYMMDD) | 10. 45TH CALENDAR DAY AFTER EVENT (YYYYMMDD) | 11. REASON FOR DELAYED CONTACT BEYOND 45 DAYS, IF APPLICABLE |
|---|---|---|
| 20111030 | 20111214 | Aggrieved has attempted on multiple occasions beginning on 20111125 to reach an EEO Office, succeeded on 20120124. |

| 12. DATE OF INITIAL CONTACT WITH EEO OFFICIAL (YYYYMMDD) | 13. 30TH CALENDAR DAY AFTER INITIAL CONTACT WITH EEO OFFICIAL (YYYYMMDD) | 14. 90TH CALENDAR DAY AFTER INITIAL CONTACT WITH EEO OFFICIAL (YYYYMMDD) | 15. DATE COUNSELING EXTENSION GRANTED, IF APPLICABLE (YYYYMMDD) |
|---|---|---|---|
| 20120124 | 20120223 | 20120423 | 20120210 |

| 16. DATE PRE-COMPLAINT INTAKE INTERVIEW CONDUCTED (YYYYMMDD) | 17. PRE-COMPLAINT INTAKE INTERVIEW CONDUCTED: |
|---|---|
| 20120204 | ☐ Telephonically   ☐ In-Person   ☒ Other (facsimile/e-mail) |

### SECTION II - ORGANIZATION WHERE ALLEGED DISCRIMINATION OCCURRED (Complete address including office symbol)

Office of Security Cooperation-Iraq (OSC-I)
ARCENT
IZ-Baghdad, Iraq

### SECTION III - RESPONDING MANAGEMENT OFFICIAL (s) INFORMATION (Include name, complete work address and phone number if known.)

BG Bryan Roberts
Office of Security Cooperation-Iraq (OSC-I) ARCENT
IZ-Baghdad, Iraq
Email:  bryan.t.roberts@iraq.centcom.mil
DSN: 318-239-8303
Under re-assignment to Fort Jackson, SC

| | |
|---|---|
| **DA FORM 7510, JUL 2010** | Page 1 of 5 |
| | APD PE v1.00ES |

000017

| SECTION IV - BASIS OF COMPLAINT *(Identify specific race, color, religion, national origin, disability, age, sex, or reprisal if alleged.)* |
|---|

☒ RACE  Caucasian                    ☐ COLOR _____   SEX ☐ Male ☐ Female

☐ AGE _____   DATE OF BIRTH _____   ☒ NATIONAL ORIGIN  Kuwait/Arab

☐ RELIGION _____   DISABILITY ☐ Mental _____   ☐ Physical _____

☐ REPRISAL _____
*(Date(s) of prior EEO activity)*

| SECTION V - MATTER(s) GIVING RISE TO COMPLAINT   *(Specify who, what, where, and when.)  (Use additional sheet of paper if necessary.)* |
|---|

The aggrieved alleges he was discriminated against based on Race (Caucasian) and National Origin (Kuwait/Arab) when:

a. On 12 March 2010, Dr. Sharon E. Lockear, USA ARCENT informed the aggrieved that the request for change in Service Computation Date (SCD) would not be granted and again affirmed on 2 Sep 2011 by Ms. Gwendolyn Caison, USA ARCENT, that the aggrieves SCD would not be changed.

b. Failure to credit the aggrieved's annual evaluation for the 2010 rating period to Official Personal File (OPF). Therefore, the aggrieved was not included in NSPS paypool.

c. In the month of April 2011 award recommendation made by Mr. Tom Lockhart, IASM COS for Meritorious Civilian Service Commendation (MCSC), and downgraded to Joint Civilian Service Commendation (JCSC) by LTC LeiAnn Lang, with presentation delayed until August 2011.

d. BG Roberts conducted a one-on-one interview on 15 October 2011, during interview the aggrieved was asked "What brought you to Houston?" and "Where were you born?"

e. On 30 October 2011, aggrieved received email of non-selection for position.

Background:

The aggrieved discussed the concern with the crediting of private sector experience with relations to how the Service Computation Date had been set, upon entrance into Government Service. The aggrieved provided documents supporting the aggrieved's beliefs and copies of emails from Human Recourses (HR) noting how decision on how the Service Computation date had been decided. The aggrieved noted that it was not clear if this action was based on incompetence or discrimination, cannot say for sure.

The aggrieved discussed the 2010 Annual Appraisal and the concern that this had not been posted to his Official Personal File (OPF) and that he was not include in paypool for consideration of performance pay and/or salary increase. The aggrieved explained that HR explained that he was not eligible for paypool. The aggrieved requested to know who to appeal to and request assistance for supervisor on how to complete current Annual Appraisal, those questions seemed to be unanswered.

The aggrieved discussed his concern as to why the MCSC award had been downgraded to a JCSC by LTC Lang and presentation delayed for 4 months. the aggrieved went on to explained that award of JCSC was later upgraded to the MCSC, but was not back dated to original time period for which it was written for. The aggrieve noted that the upgrade happened after he began to question the downgrade and that with the arrival of new Chief Of Staff the award had been upgraded and that Mr. John Takis received the same award and that the process took less then yen days. The aggrieve noted that LTC Lang on one occasion expressed "how much she hates foreigners who come to the USA and get our jobs"

The aggrieved expressed his concern that during the re-alignment of command under the Iraq drawdown that his position had been move from under the Command Staff of BG McMurry to the Command Staff of LTG Caslin. The Aggrieved had been informed that he would have to apply for his position on LTG Caslin's staff. The aggrieved applied and only after asking BG McMurry's assistance in being given a chance to interview, was the aggrieved granted an interview. During a one-on-one interview with BG Roberts on 15 October 2011, the aggrieved felt that illegal questions were asked, "What brought you to Houston?" and "Where were you born?" The aggrieved received an email on 30 October 2011 noting that he was not selected for the position.

| SECTION VI - RELIEF SOUGHT |
|---|

(No relief noted for Issues a. and b.)

Issue c: Impact award date changed to 1 March 2010 - 30 Aug 2011 to reflect the intended period without the delay and a letter of apology from LTC Lang for the delay and downgrading.

Issue d. and e. :  Make current position last as long as the denied position (2 year minimum), be promoted to GS15 and same Step as the individual selected for the position he was denied, and an effective date of 20111030, with receipt of back pay and benefits that might have been lost.

Page 2 of 5
APD PE v1.00ES

000018

## SECTION VII - RIGHTS AND RESPONSIBILITIES

THE AGGRIEVED WAS PROVIDED WITH THE AGGRIEVED PERSON'S RIGHTS AND RESPONSIBILITIES NOTICE AND WAS SPECIFICALLY ADVISED OF THE FOLLOWING:

- [X] The basis(es) for filing pre-complaint, formal complaint, and/or class complaint, and of right to file a formal complaint of discrimination.
- [X] The pre-complaint, formal and/or class complaint process.
- [X] The 45-day calendar requirement from effective date of personnel action or of the date of the matter alleged to be discriminatory.
- [X] The role of the EEO counselor, including that the counselor is not an advocate for either the aggrieved person or the agency and acts strictly as a neutral.
- [X] The activity's Alternate Dispute Resolution ( ADR) Program and right to elect either ADR (if offered) or traditional EEO counseling.
- [X] The right to remain anonymous during the pre-complaint process.
- [X] The right to representation throughout the complaint process.
- [X] Responsibility of the aggrieved to notify the EEO office in writing of any change in address and/or phone number.
- [X] Responsibility of the aggrieved to notify the EEO office in writing of non-attorney or attorney representation, including address and phone number.
- [X] The possible election requirement between a negotiated grievance procedure, MSPB procedure and the EEO complaint process.
- [X] The election options in age and wage-based discrimination complaints.

## SECTION VIII - ELECTION OF REPRESENTATION

| [ ] ATTORNEY | [ ] NON-ATTORNEY | [ ] NON-REPRESENTATIVE |
|---|---|---|

| NAME OF REPRESENTATIVE | ADDRESS |
|---|---|
| | |

| TELEPHONE NUMBER | FAX | E-MAIL |
|---|---|---|
| | | |

## SECTION IX - ALTERNATE DISPUTE RESOLUTION (ADR)

- [X] Matter determined not appropriate for ADR  _____
  *(Aggrieved must sign and date)*

- [ ] Matter determined appropriate for ADR  _____
  *(EEO Officer must initial and date)*

- [ ] Wishes to participate in ADR, if offered  _____
  *(EEO Officer must initial and date)*

    Date of written offer of ADR  _____
    Date of Agreement to Participate in ADR  _____
    Name of assigned ADR facilitator/mediator  _____
    Date ADR facilitator/mediator assigned  _____

**Result of ADR:**

- [ ] ADR was successful. Negotiated settlement agreement, signed on _____ (YYYYMMDD), is attached.
- [ ] ADR was not successful. The aggrieved was issued a Notice of Right to File a Formal Complaint of Discrimination on _____ (YYYYMMDD) and notified of requirement to file a formal complaint within **15 calendar days** after receipt of Notice of Right to File. The aggrieved was provided a DA Form 2590, Formal Complaint of Discrimination.

## SECTION X - TRADITIONAL EEO COUNSELING (EEO official to complete only those which apply.)

- [X] Election of traditional counseling.
      Name of assigned EEO counselor   Morris Schwartz
      Date EEO counselor assigned   20120124
- [ ] Election to remain anonymous.
- [X] Election to waive right to remain anonymous.
- [ ] Declined to pursue matter under Title VII.

DA FORM 7510, JUL 2010

## SECTION XI - WITNESS INQUIRY

a. Witness Information *(List all witness data here. Number sequentially and include name, title, organization, phone number, and relevant basis(es) information.)*

1. LTC LeiAnn Lang, (Formerly of) Office of Security Cooperation-IRAQ (OSC-I), IZ-Baghdad, Current Address: 13228 Sunnybrook Dr; Memphis, TN 47143, Phone: 502-475-1547, Email: lm_lang@yahoo.com, Information as it relates to award.
2. CPL Christina Lucena, 1435 Porter Street, Fort Detrick, MD 21702 [Formerly of Office of Security Cooperation-IRAQ (OSC-I), IZ-Baghdad], Information as it relates to award.
3. Mr. Thomas A. Lockhart, (Formerly of) Office of Security Cooperation-IRAQ (OSC-I), IZ-Baghdad, Current Address: Suite 209, Bldg 558, 2590 Loop Road, West, WPAFB, OH 45433-7142, E-mail: Thomas.Lockhart@wpafb.af.mil, Phone: (Work) 937-255-9734, (Cell) 937-238-2480, Information as it relates to award. //////////////Continues on Bond Paper////////////////////

b. Witness Statements

1. LTC(R) LeiAnn Lang, Race: Chinese, Asian American, National Origin: US Citizen, stated the following:

a. She is now retired from active duty service.

b. In response to Question 1 on the questionnaire, she stated, I completely disagree, that she did not hold-up, downgrade, and did not tell administrative personnel to process award and not tell anyone. She then noted that her job was to ensure that award requests were timely and written in a way that avoided downgrade and disapproval, by CoS, ISAM Director, DCG (A&T), or the DCG. She went on to explain her own lack of familiarity with civilian awards and how the overall awards program works.

c. LTC (R) Lang noted that she received the responsibility for processing this award was passed to her from Mr. Lockhart and that he told her in accordance with Gen Jansson's wishes Mr. Alabbassi was to receive the highest civilian award possible in theater and she believes that Gen Jannson also relayed that information to her. Upon this direction she spoke with Civilian Human Resources for Forward Operating Base (FOB) Union III and was told that the Joint Civilian Service Commendation Award was the highest given to civilians in theater. This award was listed in the guidance/policy for local awards, she does not the Joint Civilian Service Meritorious Award listed in local guidance/policy or she would have questioned it as a possibility for Mr. Alabbassi.

d. Upon her departure from Iraq the processing of Mr. Alabbassi's award was turned over to Marine Captain Dan Nardiello in accordance with BG McMurry's direction. The award was still processing upon LTC (R) Lang's departure, she believed for the highest level award the Joint Civilian Service Commendation Award.

e. Reference Question 2 on the questionnaire, she did not recall speaking to Mr. Alabbassi about the award. She noted that on her departure she was under the belief that Mr. Alabbassi's award was being processed for a the highest civilian award, if he received the Joint Civilian Service Commendation Award.

f. Reference Question 3 on the questionnaire, She stated that Mr. Tackis departed country after her and she does not know what award he received, nor had she process any awards for Mr. Tackis.

g. Reference Question 4 on the questionnaire, she stated "I do not condone or tolerate racism or prejudice. I would never say that I do not like foreigners, nor would I say foreigners take jobs from us." LTC (R) Lang went on to say that she has had many discussions with people where she said that she did not like the fact that the U.S. loses a lot of jobs to foreign countries because America cannot produce the products or provide the services at a cost that other countries can and that if America did produce a product or provide a services, companies would not be able to sell it at an affordable cost to the American public in order to make a profit. She noted that these statements no way implies that she does not like foreigners nor does she believe they take jobs from the U.S.

h. She closed with the statement that she did not have reason or authority to give an award to Mr. Alabbassi other then what she was directed to do. She spoke to how well Mr. Alabassi accomplished his job with reference the times she had observed him at work.
////////////////////////////////////////////////////////End of Statement/////////////////////////////////////////////////////////////

2. CPL Christina Lucena, Race: Pacific Islander, National Origin: Guam, stated the following:

a. In response to Question 1 on the questionnaire, she stated: It is true that LTC LeiAnn Lang told her not to mention the award downgrade to anyone. The date of this took place somewhere around June of 2011. CPL Lucena did not get into theater until May 26, 2011. and she was the award clerk in charge of processing the award. She noted that the award was downgraded by LTC Lang before she left, but was still processed as a Meritorious Civilian Service award. LTC Lang mentioned that the award was to be downgraded due to the approval authority for that award was in D.C. After researching the regulations that information was false and the award approval authority is a Three Star General in which LTG Ferriter did have approval authority to approve the award.

/////////////////////////////////////////////////Continued on page 5 of 5, Section XI Witness Inquiry (Con't)/////////////////////////////////////

## SECTION XI - WITNESS INQUIRY (Cont'd)

Witness Statements (Cont'd)

CPL Christina Lucena (Con't)

b. In response to Question 2 on the questionnaire, she stated: She remember the statement noted by Mr. Alabbassi was made by another service member, but she cannot remember who.  Mr. Alabbassi asked me if this is a true statement and after research into the Regulations we found that to be untrue.

c. In response to Question 3 on the questionnaire, she stated:  Yes Mr. Tackis was submitted and awarded  the Meritorious Civilian Service Award and the submission was done sometime in August 2011 and Mr. Tackis was awarded in October of 2011.

d. The belief that a lack of knowledge for submission and approval of the award may have been the cause of the miscommunication. /////////////////////////////////////////////////////////////////End of Statement//////////////////////////////////////////////////////
3. Mr. Thomas A. Lockhart, Race: Race:  Caucasian, National Origin:  United States, stated the following:

a. In response to Question 1 on the questionnaire, he stated:  To have direct knowledge (author of Award) of the award.  On the peripheral he had indirect knowledge (hearsay) on the downgrade to commendation from Mr. Alabbassi.

b. In response to Question 2 on the questionnaire, he stated:  He had no knowledge to answer.

c. In response to Question 3 on the questionnaire, he stated:  Talked to Mr. Tackis on the phone and he believes that he received a Meritorious award.  Mr. Lockhart also  received a Meritorious for my tour in Iraq.

d. He added, there are a couple of other factors to consider.  The first is the position that Mr. Alabbassi slotted in during the period of time in question.  LTC  LeiAnn Lang may have found additional justification based on the positions.  Both Mr. John Tackis and himself were on the Civilian Expeditionary Workforce positions held by the Air Force while deployed.///////////////////////////////////////////
///////////////////////////////////////////////////////////////End of Statement//////////////////////////////////////////////////////////
//////////////////////////////////////////////////////////Continued on Bond Paper///////////////////////////////////////////////////////////

c. Documents Reviewed (List)

1. Word Document, The Road to EEO, from Mr. Alabbassi.
2. Multiple e-mails provided by Mr. Alabbassi.
3. Question response from LTC(R) LeiAnn Lang.
4. Question response from Mr. Thomas A. Lockhart.
5. Question response from CPL Christina Lucena.

d. Reviewed Documents Revealed

1. Reflected the aggrieves many attempts and difficulty in reaching an EEO Office.
2. Reflected The aggrieves attempts to find resolution on his own.
3. LTC(R) noted she followed policy with relation to award and had made comments in conversations about how the U.S. losses jobs to foreign countries.
4. Mr. Lockhart responded as author of award, no direct as to what happened.
5. CPL Lucena  noted that she had been told not to mention the downgrade of award, after research the higher award presented.

## SECTION XII - OUTCOME OF PRE-COMPLAINT INQUIRY

☒ Resolution was not accomplished, therefore, I conducted the final interview with aggrieved on  20120323  (YYYYMMDD) at which time I informed the aggrieved of the full scope of my inquiry and the reason(s) articulated by management for action(s) taken.
I provided the aggrieved with a Notice of Right to File a Formal Complaint of Discrimination and a DA Form 2590, Formal Complaint of Discrimination. The aggrieved is aware of the requirement to file a formal complaint within **15 calendar days** of the final interview if not satisfied with the results of my inquiry.

☐ Resolution was accomplished.  Negotiated settlement agreement, signed on _____ (YYYYMMDD), is attached.

PRINTED NAME OF EEO COUNSELOR
Morris J. Schwartz

SIGNATURE OF EEO COUNSELOR

Attachments:
1. Extension of counseling (if applicable)
2. Copies of reviewed documents

DATE SUBMITTED TO EEO OFFICER
(YYYYMMDD)

EEO Counselor's Report, DA Form 7510 Continuation Sheet
Alabbassi, Tariq B.
ARHQOSA12JAN00202

Continuation from page 4, Section XI Witness Inquiry, Block a. Witness Information:

4.  BG Robert McMurry, (Formerly of) Office of Security Cooperation-IRAQ (OSC-I), ARCENT, IZ-Baghdad, Iraq, Current address: unknown, E-mail address: McMurry, Robert BrigGen USAF AFMC MDA/AL Robert.McMurry@kirtland.af.mil  or mcmurry.robert@gmail.com, Phone: 505-508-5238, Information as it relates to: Service Computation Date, Award, Appraisal, and Non-selection.
//////////////////////////////////////////////////End of Block a. Witness Information////////////////////////////////////////////

Continuation from page 5, Section XI Witness Inquiry, Block b. Witness Statements:

4.  BG Robert McMurry, Race: (Caucasian), National Origin: USA, Received e-mail on 27 March 2012, 5:30p.m.stating:

a.  That he had no knowledge related to the Service Computation Date (SDC) and provide his thoughts on Pay Pool question.

b.  That the authorization of awarding the Meritorious Civilian Service Award was with Chairman, Joints Chief of Staff and resulted in the Civilian Meritorious Service Award being presented.  That he does not recall what award Mr. John Tackis received or how long it took to process.

c.  That Mr. Alabbassi position had been abolished and that he had to apply for new position, that the process was lengthy, and that Mr Alabbassi was interviewed.

d.  That Mr. Alabbassi was upset with question, but never received a concrete answer as to concern. As to the questions BG Roberts asked, they seemed reasonable to him given the emphasis on Iraqi tribe and personal history.

See Witness Statement and Questionnaire for complot responses.
//////////////////////////////////////////////////End of Statement///////////////////////////////////////////////////////////

BG Bryan Roberts, RMO stated via e-mail and phone conversation:

a.  Unable to complete questions until he receives postal shipment he sent home from Iraq prior to departure.

b.  That he did ask the questions at issue and asked them of all interviewees.////////////////////////////////////
//////////////////////////////////////////////////End of Statement///////////////////////////////////////////////////////////

**13**

000022